UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ESCHELL ASHCROFT,

                              Plaintiff,

                                                        **Hon. Hugh B. Scott**

                                                            05CV488

                                                          (CONSENT)

                              v.                        **Order**

DEPT. OF CORRECTIONS, et al.,

                              Defendants.

        Before the Court is the issue of plaintiff's representation.  Plaintiff's current counsel has

written to the Court requesting to be relieved of the appointment (Docket No. 78).  The parties

consented to proceed before the undersigned as Magistrate Judge on June 15, 2006 (Docket

No. 16).

                              **BACKGROUND**

        A recital of the procedural history of this action is warranted.

        Plaintiff (an inmate initially proceeding pro se) alleges that he was legally blind and his

eyes are unusually sensitive to light and otherwise benign substances (Docket No. 37, Am.

Compl. ¶¶ 1-2).  He requested (but was denied by defendant Department of Correctional Services

("DOCS")) visual aids and accommodations for his condition while in the Special Housing Unit

of the Wende Correctional Facility ("Wende") (Docket No. 1, Compl., appendix at 10, 1-2, 3-4,

6-7; Docket No. 37, Am. Compl. ¶¶ 28-58).  Plaintiff also alleges inhumane conditions of his

confinement due either to deprivation of these accommodations or retaliatory actions by

defendants for attempts by plaintiff to obtain or retain these accommodations (see Docket No. 37, Am. Compl. ¶¶ 60-85).

The Court appointed Sheldon Smith (then associated with Hodgson Russ) counsel for plaintiff (Docket No. 15) and Joshua Feinstein of Hodgson Russ later substituted for him (Docket No. 19).  Plaintiff, through his new counsel, then filed a proposed Amended Complaint (Docket No. 24; Docket No. 27, Pl. Atty. Decl. Ex. A) and moved for leave to so file (Docket No. 26). That motion was granted (Docket No. 36) and plaintiff filed his Amended Complaint (Docket No. 37; see Docket No. 41 (order service of that pleading)).  Most of the defendants then moved to dismiss the Amended Complaint (Docket Nos. 38, 44, 45), which the Court granted in part and denied in part (Docket No. 53).  Defendants answered the Amended Complaint on June 18, 2008 (Docket No. 75).

From July 2007 plaintiff (contacting the Court pro se) has sent the Court a series of alarming letters, including a putative motion, some threatening drastic, self-destructive action. Therein, he complained about his conditions and harassment as a result of this pending action. He requested (and proposed to move for) an Order to transfer him from Wende to the Eastern Correctional Facility, a facility which plaintiff claims has the accommodations he seeks for his visual impairments and other ailments.  He also requested (among other forms of relief) restoration of accommodation devices he previously had (essentially the merits of his claim). (See Docket No. 55.)  Later, plaintiff complained that his Court-appointed counsel was not adequately assisting him (by not communicating with him and by not pursuing plaintiff's arguments).  The Court had copies of this correspondence sent to all counsel, instructed counsel to investigate the situation (Docket No. 55), and held conferences on October 16, 2007 (Docket

Nos. 59, 60), and October 19, 2007 (Docket No. 61), to discuss these issues.  The Court then

issued an Order scheduling the next conference and noted that

> "Plaintiff has complained the defendants and other prison officials have deprived
> him of wraparound sunglasses (among other accommodation equipment) essential
> for him to leave his cell to take telephone calls, including conferences with
> counsel and court teleconferences.  In order to facilitate this action, it is
> ORDERED that defendant DOCS shall provide plaintiff with equipment
> necessary to allow him to attend telephone conferences with counsel or the Court
> outside of his cell, such as wraparound sunglasses or other protective eye wear."

(Docket No. 62, Order at 1).

> Plaintiff again wrote letters to the Court

> "indicating that plaintiff did not receive wraparound ultraviolet light sunglasses
> plaintiff states is necessary for him to leave his cell to meet with counsel in this
> action.  Plaintiff is legally blind and has extreme photosensitivity[.]
>          "Defendants are to show cause why they should not be held in contempt of
> Court for failing to abide by Court's previous Order (Docket No. 62) that order
> defendant Department of Corrections Services to "provide plaintiff with
> equipment necessary to allow [plaintiff] to attend telephone conferences with
> counsel or the Court outside of his cell, such as wraparound sunglasses or other
> protective eye wear."

(Docket No. 63, Order to Show Cause at 1.)  At the Show Cause argument, the Court directed

counsel for both parties to work out conditions for plaintiff to have goggles for visits with

counsel and for an ophthalmological examination consistent with the terms mentioned during

that argument (Docket No. 65).

At the last status conference held on July 18, 2008, discovery was set to be completed by

September 30, 2008, and dispositive motions were due by November 18, 2008 (Docket No. 77).

Meanwhile, plaintiff, proceeding pro se, filed a second action against DOCS, Ashcroft v.

DOCS Medical, No. 07CV871, which is pending before this Court.

*Current Counsel Dispute*

Plaintiff, at the July 18, 2008, status conference alleged that his legal papers were destroyed by prison employees and claimed other harassment by Wende correctional staff and sought charges against those responsible[1].  The Court instructed plaintiff to raise this claim through his counsel (see also Docket No. 66, Order at 6 n.2 (plaintiff reminded that he was not to engage in hybrid representation by communicating directly to the Court while represented by counsel)).  The Court also expressed its appreciation to appointed counsel for his efforts.

On August 22, 2008, Joseph V. Sedita, Esq., a partner at Hodgson Russ, wrote to the Court requesting that the firm be relieved as counsel for plaintiff, cf. W.D.N.Y. Loc. Civ. R. 83.2(c) (withdrawal of counsel for good cause shown, effective upon Order after service of notice of withdrawal upon all counsel of record) (Docket No. 78,[2] Letter of Joseph Sedita to Chambers, Aug. 22, 2008).  Sedita attached a copy of plaintiff's letter to Melissa Subjeck (an associate in that firm assigned to this case) of July 31, 2008[3] (id., Sedita Letter, attachment).  In plaintiff's letter, he was responding to a prior letter from Hodgson Russ (which was not furnished to the Court) and, extensively used profanity, demanded there that Hodgson Russ pursue his new claims and refused in the most abusive terms to cooperate and communicate further with that firm until they agreed to pursue his new claims.

---

[1]Plaintiff also noted this in pro se correspondence he submitted to Chambers prior to that conference.

[2]The letter was sent to plaintiff and to counsel within the firm but not served upon defense counsel.  Given that the Court appointed plaintiff's counsel here, this letter was filed to have a complete record.

[3]Given the profanity expressed in plaintiff's letter, its text will not be reproduced herein.

Sedita concludes that the firm should no longer continue its pro bono representation of plaintiff.  Regarding plaintiff's July 31, 2008, letter, Sedita states "[e]nough is enough.  Mr. Ashcroft no longer wants us and we, assuredly, no longer want anything whatever to do with him.  We can [no] [sic] longer function as his lawyers," (id., Sedita Letter).

## DISCUSSION

I.      Basis for Appointed Representation

As noted when plaintiff was first appointed counsel (Docket No. 15), this appointment is within the Court's discretion, see In re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1986), and was done when counsel will provide substantial assistance in developing the plaintiff's arguments (id. at 1-2).  The appointment was made in the interest of justice and because a threshold showing of some likelihood of merit was made (id. at 2), see Cooper v. A. Sargenti Co., 877 F.2d 170, 174 (2d Cir. 1989).  Given plaintiff's alleged condition and the conditions of his confinement, counsel would provide substantial assistance in developing plaintiff's arguments and the appointment would serve the interests of justice (id.).  Counsel was serving as officers of the Court in enabling plaintiff to have access to the Court by contacting plaintiff and presenting his positions given his specific circumstances.

Here, Hodgson Russ served as officers of the Court in representing plaintiff under very difficult and trying circumstances.  The firm has provided substantial assistance in advancing plaintiff's case.  The firm amended the Complaint (Docket Nos. 24, 26, 37; see also Docket No. 35) and substantially resisted defense motions to dismiss (Docket Nos. 43, 48, 52; see Docket No. 53).  Hodgson Russ attorneys conducted discovery, defended plaintiff during defense discovery, and conducted fact investigations.  Feinstein obtained for plaintiff goggles and other

devices to facilitate plaintiff's access to the Court (see Docket No. 66, Order at 4-6), including obtaining an ophthalmological examination observed by the firm (id. at 4) and plaintiff's eventual reassignment to the medical unit of Wende.  The Court again, as was noted in the last status conference, commends the firm's efforts to date on plaintiff's behalf.

Plaintiff, however, is not satisfied with this representation because he claims that all of his allegations (especially his most recent claims) are not being asserted by counsel.  Whatever frustration plaintiff may have does not justify the use of profane and abusive language plaintiff directed toward his appointed counsel.  If plaintiff continues to use similar language to the Court, to Court appointed counsel, or to officers of the Court, his action will be dismissed under Federal Rules of Civil Procedure 16 (disobedience of pretrial Order) and 41 (dismissal for failure to prosecute).  The Court will not tolerate such abusive conduct by plaintiff.

According to the current schedule for this case, discovery should be completed by September 30, 2008 (Docket No. 77).  Neither party has indicated the need for additional time to complete discovery or had any problem to date in conducting discovery.  Any change in plaintiff's representation at this stage may disrupt this schedule.

This case differs from the run-of-the-mill plaintiff-counsel relationship.  The paying client dissatisfied with the performance of retained counsel or disagreeing with the direction or strategy counsel is pursuing merely discharges counsel and has new counsel appear or (if an individual) proceeds pro se.  If the latter, that party assumes the full risks and burdens of pursuing his case.  Similarly, counsel ethically can withdraw where the client insists upon a course of conduct that is contrary to the judgment and advice of counsel, N.Y.S. Code of Prof. Responsibility, EC 7-8.  An average pro se inmate litigant who is appointed counsel has his

6

confinement as a barrier to pursuing new counsel every time there is such dissatisfaction or disagreement.

Plaintiff here has the additional burden of his physical condition and the alleged conditions of his confinement (see Docket No. 66; see also Docket No. 37, Am. Compl.), the latter of which is the heart of his allegations in this action. The Court has acknowledged this difference by reproducing many of its Orders in larger font to ensure that plaintiff can read them without difficulty. Plaintiff has alleged that he needs visual aids and other accommodations deprived by defendants (see generally Docket No. 37, Am. Compl.; see also Docket No. 66, Order at 1, 4). In order for plaintiff to leave his cell to attend conferences with counsel or the Court, he needs special goggles to remove light from his eyes (see Docket No. 66). Thus, plaintiff's situation restricts the available options for plaintiff's representation.

II.     Options

Under the Code of Professional Responsibility, when counsel is appointed to a litigant, "the lawyer should not seek to be excused from undertaking the representation except for compelling reasons," N.Y.S. Code of Prof. Respon. EC 2-29; see id. EC 2-32. Here, Hodgson Russ has established compelling reasons to be relieved of this case. The next issue is how plaintiff is to be represented going forward.

One option is to disregard the reasons for relieving counsel and to deny Hodgson Russ's request and retain the status quo for plaintiff's representation, with plaintiff and the firm both dissatisfied with this situation. Continuing this representation may deteriorate further (if that is possible, given the venomous tenor of plaintiff's July 31, 2008, letter). The advantage of this option is that discovery and other pretrial activities can be completed without continuity

disruptions.  As a practical matter, the Court cannot compel counsel to represent an indigent

litigant, see Bothwell v. Republic Tobacco Co., 912 F. Supp. 1221, 1239 (D. Neb. 1995) (Piester,

Mag. J.); O'Connor v. Jones, 946 F.2d 1395, 1397 n.2 (8th Cir. 1991) (attorney may refuse

request to represent indigent litigant without discipline or sanction, citing Mallard v. United

States District Court, 490 U.S. 296 (1989)); Allison v. Wilson, 277 F. Supp. 271, 274 (N.D. Cal.

1967) (court cannot require attorney to serve indigent client when attorney finds cause without

merit and seeks withdrawal).

　　　　Another option is relieving Hodgson Russ, cf. W.D.N.Y. Loc. Civ. R. 83.2(c), and

appointing plaintiff a new attorney.  Plaintiff may object to appointing any counsel, but his

situation differs significantly from the average inmate litigant calls proceeding pro se if nothing

more as to provide this plaintiff with meaningful access to the Court.  If so rejected, plaintiff

cannot latter claim that he was denied counsel even if he was entitled to demand counsel, for

plaintiff is not entitled to appointment of counsel of his choice, see Lee v. Crouse, 284 F. Supp.

541, 544 (D. Kan. 1967), aff'd, 396 F.2d 952 (10th Cir. 1968).  There is a cost to the Court in

expended good will with the bar in using multiple appointments of counsel on a single case,

especially appointment for a difficult litigant.  Finding attorneys to accept these cases, cf. id.

R. 83.1(g), is difficult and, having been handled by other counsel, makes the case more difficult

to reassign.

　　　　A third option is to relieve Hodgson Russ and allow plaintiff to proceed pro se.  The

Court would be within its discretion to deny a second appointment of counsel where plaintiff lost

his first attorney due to failing to cooperate with that attorney, see Franklin v. Murphy, 745 F.2d

1221, 1236 (9th Cir. 1984).  As stated above, plaintiff's circumstances may, in effect, limit his

access to the Court (including access to legal research materials and resources) unlike other inmate litigants without his impairments who might be compelled to proceed pro se which makes his attorney his only effective access to this Court.

The Court will adopt the second option discussed above, that is relieve Hodgson Russ of this case and appoint new counsel for plaintiff.  Before new counsel is named, the issue remains of the scope of that appointment and whether plaintiff can expect to have this counsel pursue every claim plaintiff may conceive.

While "it is a principle of long standing that conduct of litigation is the prerogative of counsel," Mayes v. UVI Holdings, Inc., 280 A.D.2d 153, 154-55, 723 N.Y.S.2d 151, 155 (1st Dep't 2001), and "from the nature of the attorney-client relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions," Hallock v. State of N.Y., 64 N.Y.2d 224, 230, 485 N.Y.S.2d 510, 513 (1984); cf. N.Y.S. Code of Prof. Respon. DR 7-101(B)(1) ("where permissible," attorney may "exercise professional judgment to waive or fail to assert a right or position of the client"); id., EC 7-7, 7-8, the fundamental decision to pursue a claim remains with the client, see Hallock, supra, 64 N.Y.2d at 230, 485 N.Y.S.2d at 513 ("[e]qually rooted in the law is the principle that, without a grant of authority for the client, an attorney cannot compromise or settle a claim," citations omitted).  Counsel also enjoys the freedom to decline to pursue a different action on behalf of a client, see N.Y.S. Code of Prof. Respon. EC 2-26.  As it was with Hodgson Russ, plaintiff needs to work out with new counsel whether to pursue his new allegations (either in this action or in a separate action) as well as to consider whether to consolidate this action with his other pending action, Ashcroft, No. 07CV871, cf, Fed. R. Civ. P.

42(a).  Appointment of counsel in this action is not to furnish plaintiff with counsel for all of his actions and every single claim he may have but plaintiff and counsel could agree to the extent of representation on plaintiff's other potential or asserted claims (including taking whatever procedural steps are available to join those claims with this action).  That decision is left to plaintiff and new counsel to work out, but the appointment is for **this case only**.

Hodgson Russ's application to withdraw as counsel for plaintiff (Docket No. 78) is **granted**.  As a result, the Court appoints Nixon Peabody LLP (Christopher D. Thomas, of counsel) as counsel for the plaintiff, <u>pro bono</u>, pursuant to 28 U.S.C. § 1915(d).  <u>Hodge v. Police Officers</u>, 802 F.2d 58 (2d Cir. 1986); <u>Cooper</u>, <u>supra</u>, 877 F.2d 170.  Hodgson Russ shall transmit to new counsel their file on this matter and cooperate in the transition of this case to new counsel. Plaintiff shall cooperate fully with new counsel.  If plaintiff abuses this newly appointed counsel, **this action will be dismissed** on the basis discussed previously.

The file for this matter is maintained in the Office of the Clerk of the United States District Court in Buffalo, New York.  If necessary, the new attorney for the plaintiff should make arrangements to meet with a Pro Se Staff Attorney to review the file and obtain copies of the relevant papers.  The Court Clerk is instructed to forward a copy of this Order to Nixon, Peabody in care of Christopher D. Thomas.

A status conference will be held with all counsel on **Friday, October 24, 2008,** at **10:30 am**, at 414 U.S. Courthouse, 68 Court Street, Buffalo, New York, to discuss the status and reset the schedule of this matter in light of the change in counsel.  Hodgson Russ need not appear at this conference provided that a proper transfer of this action has been made with Nixon

Peabody.  As with previous conferences (see Docket Nos. 62, 66, 74, 76), defense counsel shall endeavor to have plaintiff produced to participate in this conference by telephone.

Deadlines in the Scheduling Order (see Docket No. 77) **are held in abeyance** pending the status conference.

As a courtesy (as with a prior Order of this Court, see, e.g., Docket Nos. 13, 14), a copy of this Order is attached, printed in 40-point font typeface, to enable plaintiff to read it, and will be sent by Chambers to plaintiff at the Wende Correctional Facility.

So Ordered.

/s/ Hugh B. Scott

Honorable Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 18, 2008

Attachment–40 point font copy of text

11